TREATIES AND OTHER INTERNATIONAL ACTS SERIES 03-825

# EXTRADITION

Treaty Between the

UNITED STATES OF AMERICA

and PERU

Signed at Lima July 26, 2001



Appendix A-1

NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# PERU

## Extradition

*Treaty signed at Lima July 26, 2001;*
*Transmitted by the President of the United States of America*
*to the Senate May 8, 2002 (Treaty Doc. 107-6,*
*107th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*October 8, 2002 (Senate Executive Report No. 107-12,*
*107th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*November 14, 2002;*
*Ratified by the President January 23, 2003;*
*Exchange of instruments of ratification at Washington*
*August 25, 2003;*
*Entered into force August 25, 2003.*

EXTRADITION TREATY

BETWEEN

THE UNITED STATES OF AMERICA

AND

THE REPUBLIC OF PERU

2

The United States of America and the Republic of Peru  (hereinafter also, the "Contracting States"),

Recalling the Treaty on Extradition Between the United States of America and the Republic of Peru, signed at Lima November 28, 1899, and related agreement of February 15, 1990, done at Cartagena, Colombia;

Desiring to enhance cooperation between the two States in the suppression of crime;

Have agreed as follows:

3

## Article I

### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with, found guilty of, or sentenced for, the commission of an extraditable offense.

## Article II

### Extraditable Offenses

1.      An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2.      An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or association or participation in the commission of, any offense described in paragraph 1.

3.      For the purposes of this Article, an offense shall be an extraditable offense, regardless of:

> (a)     whether the laws in the Contracting States place the offense within a different category of offenses or describe the offense by different terminology, so long as the underlying conduct is criminal in both States;

> (b)     whether the offense is one for which the laws of the Requesting State require, for the purpose of establishing jurisdiction of its courts, evidence of interstate transportation, or the use of the mails or other facilities affecting interstate or foreign commerce, as elements of the specific offense;  or

> (c)     where the offense was committed.

4.      If extradition has been granted for one or more extraditable offenses, it shall also be granted for any other offense specified in the request even if the latter offense is punishable by one year or less of deprivation of liberty, provided that all other requirements for extradition are met.

4

## Article III

### Extradition of Nationals

Extradition shall not be refused on the ground that the person sought is a national of the Requested State.

## Article IV

### Bases for Denial of Extradition

1.      Extradition shall not be granted:

(a)      if the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. However, extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the same acts for which extradition is requested, or to discontinue any criminal proceedings that have been instituted against the person sought for those acts; or

(b)      if prosecution of the offense or execution of the penalty is barred by lapse of time under the laws of the Requesting State.

2.      Extradition shall not be granted if the offense for which extradition is requested constitutes a political offense.  For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

(a)      a murder or other violent crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b)      genocide, as described in the Convention on the Prevention and Punishment of the Crime of Genocide, done at Paris on December 9, 1948;

(c)      an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution, including, but not limited to:

(i)      illicit drug trafficking and related offenses, as described in the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, done at Vienna on December 20, 1988;  and

(ii)      offenses related to terrorism, as set forth in multilateral international agreements to which both Contracting States are parties; and

(d)      an attempt or conspiracy to commit, or association or participation in the commission of, any of the foregoing offenses.

5

3.      Extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4.      The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

5.      The executive authority of the Requested State may refuse extradition if the person sought would be tried, or punished as the result of a trial, under extraordinary criminal laws or procedures in the Requesting State.

Article V

Death Penalty

1.      When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the executive authority of the Requested State may refuse extradition unless the Requesting State provides an assurance that the person sought will not be executed. In cases in which such an assurance is provided, the death penalty shall not be carried out, even if imposed by the courts in the Requesting State.

2.      Except in instances in which the death penalty applies, extradition shall not be refused, nor conditions imposed, on the basis that the penalty for the offense is greater in the Requesting State than in the Requested State.

Article VI

Extradition Procedures and Required Documents

1.      All requests for extradition shall be made in writing and submitted through the diplomatic channel.

2.      All requests for extradition shall be supported by:

_The petition had my address ·_ (a)      documents, statements, or other types of information that describe the identity and probable location of the person sought;

(b)      information describing the facts of the offense and the procedural history of the case;

——1> (c)      the text of the laws describing the essential elements of, and the applicable punishment for, the offense for which extradition is requested;

(d)      the text of the laws indicating that neither the prosecution nor the execution of the penalty are barred by lapse of time in the Requesting State; and

(e)      the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

6

3.    A request for extradition of a person who is sought for prosecution shall also be supported by:

(a)    a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b)    a copy of the charging document; and

(c)    such evidence as would be sufficient to justify the committal for trial of the person if the offense had been committed in the Requested State.

*what is evidence in Peru?*

4.    A request for extradition relating to a person who has been found guilty of, or sentenced for, the offense for which extradition is sought shall also be supported by:

(a)    a copy of the judgment of conviction or, if such copy is not available, a statement by a competent judicial authority that the person has been found guilty;

(b)    evidence or information establishing that the person sought is the person to whom the finding of guilt refers; and

(c)    a copy of the sentence imposed, if the person sought has been sentenced, and, if applicable, a statement establishing to what extent the sentence has been carried out.

5.    If the Requested State requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that State shall require.


Article VII

Translation and Admissibility of Documents

1.    All documents submitted by the Requesting State shall be accompanied by a translation into the language of the Requested State.

2.    The documents that accompany an extradition request shall be admitted as evidence in extradition proceedings if:

(a)    the documents are certified or authenticated by the appropriate accredited diplomatic or consular officer of the Requested State in the Requesting State; or

(b)    the documents are certified or authenticated in any other manner accepted by the laws in the Requested State.

7

## Article VIII

### Provisional Arrest

1.      In case of urgency, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition.  A request for provisional arrest shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Peru.

2.      The application for provisional arrest shall contain:

(a)      a description of the person sought;

(b)      the location of the person sought, if known;

(c)      a brief statement of the relevant facts of the case, including, if possible, the time and location of the offense;

(d)      a description of the law or laws violated;

(e)      a statement of the existence of a warrant of arrest, or of a finding of guilt or judgment of conviction, against the person sought; and

(f)      a statement that a request for extradition for the person sought will follow.

3.      The Requesting State shall be notified without delay of the disposition of its application for provisional arrest and the reasons for any denial of such application.

4.      A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the request for extradition and the supporting documents required in Article VI.

5.      The discharge from custody of the person sought pursuant to paragraph 4 of this Article shall not be an obstacle to the rearrest and extradition of that person if the extradition request is received later.

8

## Article IX

### Decision on the Extradition Request and Surrender of the Person Sought

1.      The Requested State shall process the request for extradition in accordance with the procedures set forth in its law and this Treaty, and shall promptly notify the Requesting State, through the diplomatic channel, of its decision regarding such request.

2.      If extradition is granted, the Contracting States shall agree on the time and place for the surrender of the person sought. If that person is not removed from the territory of the Requested State within the time prescribed by the law of that State, if any, that person may be discharged from custody, and the Requested State may thereafter refuse extradition for the same offense.

3.      If unforeseen circumstances prevent the surrender of the person sought, the affected Contracting State shall inform the other State, and such States shall agree on a new date for the surrender, consistent with the laws of the Requested State.

4.      If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial and, upon request, shall provide copies of pertinent decisions.

## Article X

### Deferred and Temporary Surrender

1.      The Requested State may postpone the extradition proceedings against, or the surrender of, a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed. The Requested State shall notify the Requesting State as soon as possible of any postponement pursuant to this paragraph.

2.      If extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, such State may, in exceptional cases, temporarily surrender the person sought to the Requesting State exclusively for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

9

## Article XI

### Concurrent Requests

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State it will surrender the person. In making its decision, the Requested State shall consider all relevant factors, including the following:

(a)   whether the requests were made pursuant to treaty;

(b)   the place where each offense was committed;

(c)   the respective interests of the requesting States;

(d)   the gravity of each offense;

(e)   the possibility of further extradition between the requesting States; and

(f)   the chronological order in which the requests were received by the Requested State.

## Article XII

### Seizure and Surrender of Property

1.   To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense for which extradition is granted. The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.   The Requested State may defer the surrender of the items described in paragraph 1 of this Article for such time as it is deemed necessary for an investigation or proceeding in that State. The Requested State may also surrender such items on condition that they be returned to that State as soon as practicable.

3.   The rights of the Requested State or of third parties in such items shall be duly respected.

10

## Article XIII

### Rule of Speciality

1.      A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

    (a)      an offense for which extradition was granted, or a differently denominated offense, provided that such differently denominated offense:

        (i)      is based on the same facts on which extradition was granted, and would itself be an extraditable offense; or

        (ii)      is a lesser included offense of an offense for which extradition was granted;

    (b)      an offense committed after the extradition of the person; or

    (c)      an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment.  For the purpose of this subparagraph:

        (i)      the Requested State may require the submission of the documents specified in Article VI; and

        (ii)      the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.      A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to such person's surrender unless the surrendering State consents.

3.      Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the subsequent extradition of that person to a third State, if that person:

    (a)      leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

    (b)      does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave.

11

### Article XIV

#### Simplified Procedure for Surrender

If the person sought consents to surrender to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

### Article XV

#### Transit

1.       Either Contracting State may authorize, upon request of the other Contracting State, transit through its territory of a person surrendered to such other State by a third State.  A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Peru.  Such request shall contain a description and identification of the person being transported and a brief statement of the facts of the case.  A person in transit may be detained in custody during the period of transit.

2.       No authorization shall be required if one Contracting State is transporting a person surrendered to it by a third State using air transportation and no landing is scheduled on the territory of the other Contracting State.  If an unscheduled landing occurs on the territory of a Contracting State, that State may require a transit request as provided in paragraph 1 of this Article.  If required, any such request shall be provided within ninety-six (96) hours of the unscheduled landing.  The Contracting State in which the unscheduled landing occurs may detain the person to be transported until the transit is effected.

### Article XVI

#### Representation and Expenses

1.       The Requested State shall advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition.

2.       The Requesting State shall bear the expenses related to the translation of documents and the transportation to that State of the person sought.  The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3.       Neither Contracting State shall make any pecuniary claim against the other State arising out of the arrest, detention, custody, examination, or surrender of persons sought under this Treaty.

12

## Article XVII

### Consultation

The United States Department of Justice and the Ministry of Justice of the Republic of Peru may consult with each other directly in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

## Article XVIII

### Application

The provisions of this Treaty shall apply from the date of its entry into force:

(a)    to pending extradition requests for which a final decision has not yet been rendered; and

(b)    to extradition requests initiated subsequent to such entry into force, even if the crimes were committed prior to that date, provided that at the time of their commission they constituted offenses under the laws in both Contracting States.

*Neither applicinstmet*

13

## Article XIX

### Final Clauses

1.   This Treaty shall be subject to ratification, and will enter into force upon exchange of the instruments of ratification. The instruments of ratification shall be exchanged as soon as possible.

2.   Upon the entry into force of this Treaty, the Treaty on Extradition Between the United States of America and the Republic of Peru, signed at Lima November 28, 1899, and related agreement of February 15, 1990, done at Cartagena, Colombia, shall become null and void.

3.   Either Contracting State may terminate this Treaty when it deems such action appropriate by giving written notice thereof to the other Contracting State. The termination shall be effective six months after the date of such notice.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective governments, have signed this Treaty.

DONE in duplicate, at Lima, in the English and the Spanish languages, both texts being equally authentic, this 26th day of July , 2001.


FOR THE UNITED STATES
OF AMERICA:

FOR THE REPUBLIC
OF PERU:

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 16-4261 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE |
| | ) | OPPOSING BARTOLI'S MOTION |
| ERIC BARTOLI, | ) | TO STAY RESOLUTION OF HIS |
| | ) | PETITION FOR REHEARING AND |
| Defendant-Appellant. | ) | REOPEN THE CASE BEFORE THE |
| | ) | PANEL |

On March 16, 2018, this Court issued its opinion denying

defendant-appellant Eric Bartoli's appeal.  Among other things, this Court rejected

several claimed sentencing errors, noting that, notwithstanding the joint

recommendation for a lower, Guideline-range sentence, the district court largely

based its 240-month sentence on the severe financial harm that Bartoli had caused

his many victims, his leadership role in the scheme, the fact that he fled to Peru to

avoid prosecution, and his initiation of another, multimillion-dollar fraud scheme

while there.  (Doc. 62-2: Opinion, Page 3, 7, 8-9, 12).  Bartoli sought an extension

of time to file a petition for rehearing and subsequently filed that petition.

Thereafter, he filed the instant motion.

The United States of America opposes Bartoli's current motion to stay

resolution of his pending petition for rehearing and reopen his case before the

panel concerning his new claim about the applicable statutory maximum penalties

for his securities, mail, and wire fraud convictions (Counts 2, 4, and 5).  While the government agrees now, and will acknowledge if later before the district court, that the district court did not apply the correct statutory maximum penalties to Counts 2, 4, and 5 at sentencing, Bartoli must raise this claim in the district court via a petition under 28 U.S.C. § 2255.  It is not now properly before this Court.

As Bartoli acknowledges, he overlooked this issue "[f]rom the inception of the case through the filing of the Petition for Rehearing on April 30, 2018 (refiled on May 1)."  (Doc. 68: Bartoli's Motion, Page 1).  Further, he has presented no authority demonstrating that this Court, after issuing its opinion, is the proper forum for addressing this newly asserted issue.  As such, the government requests that this Court deny Bartoli's request in favor of him instead seeking Section 2255 relief from the district court.  The government concedes, and thus will not in the future contest, that the district court applied the wrong statutory maximums for Counts 2, 4, and 5.

Specifically, Bartoli argues that the parties, the U.S. Probation Department, and the district court all mistakenly believed that a 20-year statutory maximum applied to his securities, mail, and wire fraud offenses when, in fact, lower statutory maximum penalties applied to those offenses at the time he committed those crimes.  The government agrees that Bartoli's charged and admitted offense conduct for his securities, mail, and wire fraud offenses ended by August 27, 1999.

1

1
2      UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF OHIO
3        EASTERN DIVISION

4  UNITED STATES OF AMERICA,

5      Plaintiff,    Case No. 5:03CR387
             Akron, Ohio
6    vs.       Thursday, October 29, 2015
             1:30 p.m.
7  ERIC V. BARTOLI,

8      Defendant.

9


10      TRANSCRIPT OF ARRAIGNMENT
    BEFORE THE HONORABLE JOHN R. ADAMS
11     UNITED STATES DISTRICT JUDGE

12

13 APPEARANCES:

14 For the Government: Antoinette T. Bacon
          Christos N. Georgalis
15         Office of the U.S. Attorney - Cleveland
          Carl B. Stokes U.S. Courthouse
16         801 Superior Avenue, West, Suite 400
          Cleveland, Ohio 44113
17         (216) 622-3600

18 For the Defendant: Barry M. Ward
          Law Office of Barry M. Ward
19         1000 National City Center
          One Cascade Plaza
20         Cleveland, Ohio 44113
          (330) 535-1555

21 Court Reporter:  Caroline Mahnke, RMR, CRR
          Federal Building & U.S. Courthouse
22         2 South Main Street, Suite 568
          Akron, Ohio 44308
23         (330) 252-6021

24
  Proceedings recorded by mechanical stenography; transcript
25 produced by computer-aided transcription.

1          MR. GEORGALIS:  Nothing further, Judge.  Thank

2   you.

3          THE COURT:  Mr. Ward?

4          MR. WARD:  Nothing on behalf of the defendant,

5   sir.

6          THE COURT:  All right.  That's how we will

7   proceed.

8    Mr. Bartoli, cooperate with Mr. Ward.  He has been

9   around a long time.  He's seasoned.  And he'll assist you in

10   your defense of the matter.

11          THE DEFENDANT:  I will.

12          THE COURT:  Thank you.  That will be the Court's

13   order.

14      (Proceedings concluded at 1:40 p.m.)

15

16          C E R T I F I C A T E

17

18      I certify that the forgoing is a correct

19   transcript from the record of proceedings in the

20   above-entitled matter.

21

22      S/Caroline Mahnke        7/7/2017

23     Caroline Mahnke, RMR, CRR    Date

24

25

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 03-825

# EXTRADITION

Treaty Between the

UNITED STATES OF AMERICA

and PERU

Signed at Lima July 26, 2001



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

Appendix A-2

# PERU

### Extradition

*Treaty signed at Lima July 26, 2001;*
*Transmitted by the President of the United States of America*
*    to the Senate May 8, 2002 (Treaty Doc. 107-6,*
*    107th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*    October 8, 2002 (Senate Executive Report No. 107-12,*
*    107th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*    November 14, 2002;*
*Ratified by the President January 23, 2003;*
*Exchange of instruments of ratification at Washington*
*    August 25, 2003;*
*Entered into force August 25, 2003.*

EXTRADITION TREATY

BETWEEN

THE UNITED STATES OF AMERICA

AND

THE REPUBLIC OF PERU

2

The United States of America and the Republic of Peru  (hereinafter also, the "Contracting States"),

Recalling the Treaty on Extradition Between the United States of America and the Republic of Peru, signed at Lima November 28, 1899, and related agreement of February 15, 1990, done at Cartagena, Colombia;

Desiring to enhance cooperation between the two States in the suppression of crime;

Have agreed as follows:

3

## Article I

### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with, found guilty of, or sentenced for, the commission of an extraditable offense.

## Article II

### Extraditable Offenses

1.      An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2.      An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or association or participation in the commission of, any offense described in paragraph 1.

3.      For the purposes of this Article, an offense shall be an extraditable offense, regardless of:

(a)     whether the laws in the Contracting States place the offense within a different category of offenses or describe the offense by different terminology, so long as the underlying conduct is criminal in both States;

(b)     whether the offense is one for which the laws of the Requesting State require, for the purpose of establishing jurisdiction of its courts, evidence of interstate transportation, or the use of the mails or other facilities affecting interstate or foreign commerce, as elements of the specific offense; or

(c)     where the offense was committed.

4.      If extradition has been granted for one or more extraditable offenses, it shall also be granted for any other offense specified in the request even if the latter offense is punishable by one year or less of deprivation of liberty, provided that all other requirements for extradition are met.

4

## Article III

### Extradition of Nationals

Extradition shall not be refused on the ground that the person sought is a national of the Requested State.

## Article IV

### Bases for Denial of Extradition

1.    Extradition shall not be granted:

    (a)    if the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. However, extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the same acts for which extradition is requested, or to discontinue any criminal proceedings that have been instituted against the person sought for those acts; or

    (b)    if prosecution of the offense or execution of the penalty is barred by lapse of time under the laws of the Requesting State.

2.    Extradition shall not be granted if the offense for which extradition is requested constitutes a political offense. For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

    (a)    a murder or other violent crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

    (b)    genocide, as described in the Convention on the Prevention and Punishment of the Crime of Genocide, done at Paris on December 9, 1948;

    (c)    an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution, including, but not limited to:

        (i)    illicit drug trafficking and related offenses, as described in the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, done at Vienna on December 20, 1988; and

        (ii)    offenses related to terrorism, as set forth in multilateral international agreements to which both Contracting States are parties; and

    (d)    an attempt or conspiracy to commit, or association or participation in the commission of, any of the foregoing offenses.

5

3.     Extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4.     The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

5.     The executive authority of the Requested State may refuse extradition if the person sought would be tried, or punished as the result of a trial, under extraordinary criminal laws or procedures in the Requesting State.

Article V

Death Penalty

1.     When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the executive authority of the Requested State may refuse extradition unless the Requesting State provides an assurance that the person sought will not be executed. In cases in which such an assurance is provided, the death penalty shall not be carried out, even if imposed by the courts in the Requesting State.

2.     Except in instances in which the death penalty applies, extradition shall not be refused, nor conditions imposed, on the basis that the penalty for the offense is greater in the Requesting State than in the Requested State.

Article VI

Extradition Procedures and Required Documents

1.     All requests for extradition shall be made in writing and submitted through the diplomatic channel.

2.     All requests for extradition shall be supported by:

*The petition had my address*

(a)     documents, statements, or other types of information that describe the identity and probable location of the person sought;

(b)     information describing the facts of the offense and the procedural history of the case;

(c)     the text of the laws describing the essential elements of, and the applicable punishment for, the offense for which extradition is requested;

(d)     the text of the laws indicating that neither the prosecution nor the execution of the penalty are barred by lapse of time in the Requesting State; and

(e)     the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

6

3.    A request for extradition of a person who is sought for prosecution shall also be supported by:

(a)    a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b)    a copy of the charging document; and

(c)    such evidence as would be sufficient to justify the committal for trial of the person if the offense had been committed in the Requested State.

4.    A request for extradition relating to a person who has been found guilty of, or sentenced for, the offense for which extradition is sought shall also be supported by:

(a)    a copy of the judgment of conviction or, if such copy is not available, a statement by a competent judicial authority that the person has been found guilty;

(b)    evidence or information establishing that the person sought is the person to whom the finding of guilt refers; and

(c)    a copy of the sentence imposed, if the person sought has been sentenced, and, if applicable, a statement establishing to what extent the sentence has been carried out.

5.    If the Requested State requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that State shall require.


Article VII

Translation and Admissibility of Documents

1.    All documents submitted by the Requesting State shall be accompanied by a translation into the language of the Requested State.

2.    The documents that accompany an extradition request shall be admitted as evidence in extradition proceedings if:

(a)    the documents are certified or authenticated by the appropriate accredited diplomatic or consular officer of the Requested State in the Requesting State; or

(b)    the documents are certified or authenticated in any other manner accepted by the laws in the Requested State.

7

## Article VIII

### Provisional Arrest

1.      In case of urgency, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition.  A request for provisional arrest shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Peru.

2.      The application for provisional arrest shall contain:

(a)      a description of the person sought;

(b)      the location of the person sought, if known;

(c)      a brief statement of the relevant facts of the case, including, if possible, the time and location of the offense;

(d)      a description of the law or laws violated;

(e)      a statement of the existence of a warrant of arrest, or of a finding of guilt or judgment of conviction, against the person sought; and

(f)      a statement that a request for extradition for the person sought will follow.

3.      The Requesting State shall be notified without delay of the disposition of its application for provisional arrest and the reasons for any denial of such application.

4.      A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the request for extradition and the supporting documents required in Article VI.

5.      The discharge from custody of the person sought pursuant to paragraph 4 of this Article shall not be an obstacle to the rearrest and extradition of that person if the extradition request is received later.

8

## Article IX

### Decision on the Extradition Request and Surrender of the Person Sought

1.    The Requested State shall process the request for extradition in accordance with the procedures set forth in its law and this Treaty, and shall promptly notify the Requesting State, through the diplomatic channel, of its decision regarding such request.

2.    If extradition is granted, the Contracting States shall agree on the time and place for the surrender of the person sought. If that person is not removed from the territory of the Requested State within the time prescribed by the law of that State, if any, that person may be discharged from custody, and the Requested State may thereafter refuse extradition for the same offense.

3.    If unforeseen circumstances prevent the surrender of the person sought, the affected Contracting State shall inform the other State, and such States shall agree on a new date for the surrender, consistent with the laws of the Requested State.

4.    If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial and, upon request, shall provide copies of pertinent decisions.

## Article X

### Deferred and Temporary Surrender

1.    The Requested State may postpone the extradition proceedings against, or the surrender of, a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed. The Requested State shall notify the Requesting State as soon as possible of any postponement pursuant to this paragraph.

2.    If extradition is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, such State may, in exceptional cases, temporarily surrender the person sought to the Requesting State exclusively for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

9

## Article XI

### Concurrent Requests

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State it will surrender the person.  In making its decision, the Requested State shall consider all relevant factors, including the following:

(a)     whether the requests were made pursuant to treaty;

(b)     the place where each offense was committed;

(c)     the respective interests of the requesting States;

(d)     the gravity of each offense;

(e)     the possibility of further extradition between the requesting States; and

(f)     the chronological order in which the requests were received by the Requested State.

## Article XII

### Seizure and Surrender of Property

1.     To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense for which extradition is granted.  The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.     The Requested State may defer the surrender of the items described in paragraph 1 of this Article for such time as it is deemed necessary for an investigation or proceeding in that State.  The Requested State may also surrender such items on condition that they be returned to that State as soon as practicable.

3.     The rights of the Requested State or of third parties in such items shall be duly respected.

10

## Article XIII

## Rule of Speciality

1.      A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

    (a)      an offense for which extradition was granted, or a differently denominated offense, provided that such differently denominated offense:

        (i)      is based on the same facts on which extradition was granted, and would itself be an extraditable offense; or

        (ii)      is a lesser included offense of an offense for which extradition was granted;

    (b)      an offense committed after the extradition of the person; or

    (c)      an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. For the purpose of this subparagraph:

        (i)      the Requested State may require the submission of the documents specified in Article VI; and

        (ii)      the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.      A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to such person's surrender unless the surrendering State consents.

3.      Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the subsequent extradition of that person to a third State, if that person:

    (a)      leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

    (b)      does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave.

11

### Article XIV

#### Simplified Procedure for Surrender

If the person sought consents to surrender to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

### Article XV

#### Transit

1. Either Contracting State may authorize, upon request of the other Contracting State, transit through its territory of a person surrendered to such other State by a third State. A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Peru. Such request shall contain a description and identification of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization shall be required if one Contracting State is transporting a person surrendered to it by a third State using air transportation and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of a Contracting State, that State may require a transit request as provided in paragraph 1 of this Article. If required, any such request shall be provided within ninety-six (96) hours of the unscheduled landing. The Contracting State in which the unscheduled landing occurs may detain the person to be transported until the transit is effected.

### Article XVI

#### Representation and Expenses

1. The Requested State shall advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation to that State of the person sought. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither Contracting State shall make any pecuniary claim against the other State arising out of the arrest, detention, custody, examination, or surrender of persons sought under this Treaty.

Appendix A-14

12

## Article XVII

## Consultation

The United States Department of Justice and the Ministry of Justice of the Republic of Peru may consult with each other directly in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

## Article XVIII

## Application

The provisions of this Treaty shall apply from the date of its entry into force:

(a)     to pending extradition requests for which a final decision has not yet been rendered; and

(b)     to extradition requests initiated subsequent to such entry into force, even if the crimes were committed prior to that date, provided that at the time of their commission they constituted offenses under the laws in both Contracting States.

*Neither applies to me!*

13

## Article XIX

### Final Clauses

1.      This Treaty shall be subject to ratification, and will enter into force upon exchange of the instruments of ratification.  The instruments of ratification shall be exchanged as soon as possible.

2.      Upon the entry into force of this Treaty, the Treaty on Extradition Between the United States of America and the Republic of Peru, signed at Lima November 28, 1899, and related agreement of February 15, 1990, done at Cartagena, Colombia, shall become null and void.

3.      Either Contracting State may terminate this Treaty when it deems such action appropriate by giving written notice thereof to the other Contracting State.  The termination shall be effective six months after the date of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective governments, have signed this Treaty.

DONE in duplicate, at Lima, in the English and the Spanish languages, both texts being equally authentic, this 26th day of July, 2001.

FOR THE  UNITED STATES
OF AMERICA:

FOR THE REPUBLIC
OF PERU:

Appendix A-16

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 16-4261 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE |
| | ) | OPPOSING BARTOLI'S MOTION |
| ERIC BARTOLI, | ) | TO STAY RESOLUTION OF HIS |
| | ) | PETITION FOR REHEARING AND |
| Defendant-Appellant. | ) | REOPEN THE CASE BEFORE THE |
| | ) | PANEL |

On March 16, 2018, this Court issued its opinion denying

defendant-appellant Eric Bartoli's appeal.  Among other things, this Court rejected

several claimed sentencing errors, noting that, notwithstanding the joint

recommendation for a lower, Guideline-range sentence, the district court largely

based its 240-month sentence on the severe financial harm that Bartoli had caused

his many victims, his leadership role in the scheme, the fact that he fled to Peru to

avoid prosecution, and his initiation of another, multimillion-dollar fraud scheme

while there.  (Doc. 62-2: Opinion, Page 3, 7, 8-9, 12).  Bartoli sought an extension

of time to file a petition for rehearing and subsequently filed that petition.

Thereafter, he filed the instant motion.

The United States of America opposes Bartoli's current motion to stay

resolution of his pending petition for rehearing and reopen his case before the

panel concerning his new claim about the applicable statutory maximum penalties

for his securities, mail, and wire fraud convictions (Counts 2, 4, and 5). While the

government agrees now, and will acknowledge if later before the district court, that

the district court did not apply the correct statutory maximum penalties to Counts

2, 4, and 5 at sentencing, Bartoli must raise this claim in the district court via a

petition under 28 U.S.C. § 2255. It is not now properly before this Court.

As Bartoli acknowledges, he overlooked this issue "[f]rom the inception of

the case through the filing of the Petition for Rehearing on April 30, 2018 (refiled

on May 1)." (Doc. 68: Bartoli's Motion, Page 1). Further, he has presented no

authority demonstrating that this Court, after issuing its opinion, is the proper

forum for addressing this newly asserted issue. As such, the government requests

that this Court deny Bartoli's request in favor of him instead seeking Section 2255

relief from the district court. The government concedes, and thus will not in the

future contest, that the district court applied the wrong statutory maximums for

Counts 2, 4, and 5.

Specifically, Bartoli argues that the parties, the U.S. Probation Department,

and the district court all mistakenly believed that a 20-year statutory maximum

applied to his securities, mail, and wire fraud offenses when, in fact, lower

statutory maximum penalties applied to those offenses at the time he committed

those crimes. The government agrees that Bartoli's charged and admitted offense

conduct for his securities, mail, and wire fraud offenses ended by August 27, 1999.

1

1

2                        UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF OHIO
3                             EASTERN DIVISION

4    UNITED STATES OF AMERICA,

5              Plaintiff,           Case No. 5:03CR387
                                    Akron, Ohio
6         vs.                       Thursday, October 29, 2015
                                    1:30 p.m.
7    ERIC V. BARTOLI,

8              Defendant.

9

10                      TRANSCRIPT OF ARRAIGNMENT
                 BEFORE THE HONORABLE JOHN R. ADAMS
11                  UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13

     For the Government:    Antoinette T. Bacon
14                          Christos N. Georgalis
                            Office of the U.S. Attorney - Cleveland
15                          Carl B. Stokes U.S. Courthouse
                            801 Superior Avenue, West, Suite 400
16                          Cleveland, Ohio 44113
                            (216) 622-3600
17
     For the Defendant:     Barry M. Ward
18                          Law Office of Barry M. Ward
                            1000 National City Center
19                          One Cascade Plaza
                            Cleveland, Ohio 44113
20                          (330) 535-1555

21   Court Reporter:        Caroline Mahnke, RMR, CRR
                            Federal Building & U.S. Courthouse
22                          2 South Main Street, Suite 568
                            Akron, Ohio 44308
23                          (330) 252-6021

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.

Case: 5:19-cv-01841-JRA  Doc #: 1-4  Filed: 08/13/19  40 of 54.  PageID #: 77
Case: 5:03-cr-00387-JRA  Doc #: 65  Filed: 07/07/17  9 of 9.  PageID #: 471

9

1          MR. GEORGALIS:  Nothing further, Judge.  Thank

2     you.

3          THE COURT:  Mr. Ward?

4          MR. WARD:  Nothing on behalf of the defendant,

5     sir.

6          THE COURT:  All right.  That's how we will

7     proceed.

8          Mr. Bartoli, cooperate with Mr. Ward.  He has been

9     around a long time.  He's seasoned.  And he'll assist you in

10    your defense of the matter.

11         THE DEFENDANT:  I will.

12         THE COURT:  Thank you.  That will be the Court's

13    order.

14         (Proceedings concluded at 1:40 p.m.)

15

16                    C E R T I F I C A T E

17

18          I certify that the forgoing is a correct

19    transcript from the record of proceedings in the

20    above-entitled matter.

21

22         S/Caroline Mahnke                7/7/2017

23          Caroline Mahnke, RMR, CRR          Date

24

25

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 16-4748

UNITED STATES
*Appellee*

v.

ERIC BARTOLI
*Defendant-Appellant*

## MOTION TO STAY RESOLUTION OF PETITION FOR REHEARING AND TO REOPEN THE CASE BEFORE THE PANEL TO RAISE CONSTITUTIONAL PLAIN ERROR CONCERNING STATUTORY MAXIMUM SENTENCE

*[handwritten: and go back to a 2255 cause it's the same judge that do the error.]*

Defendant-Appellant, Eric Bartoli, respectfully moves that the Court stay

resolution of the pending Petition for Rehearing and reopen the case before the

panel so that he may raise a constitutional plain error concerning the illegal

sentences that the District Court imposed in excess of the then-applicable statutory

maximum sentence. From inception of the case through the filling of the Petition

for Rehearing on April 30, 2018 (refiled on May 1), undersigned appellate counsel,

predecessor trial counsel, the government, Probation, and the District Court itself

had all overlooked this issue.

All three of Mr. Bartoli's concurrent 20-year sentences are illegal, in

violation of the *Ex Post Facto* Clause, because at the time of his offense conduct,

from 1995 to 1999, the statutory maximum sentences for the relevant counts of

1

Appendix D-1

conviction were 5 years (count 4: wire fraud, 18 U.S.C. § 1343 (2001); count 5:

mail fraud, 18 U.S.C. § 1341 (2001) and 10 years (count 2: securities fraud, 15

U.S.C. § 78ff(a) (2001)), respectively. Accordingly, Mr. Bartoli's sentence should

be vacated, and his case should be remanded for resentencing before a different

District Judge.

Mr. Bartoli recognizes that "as a general rule, this Court will not consider

arguments not presented in a party's opening brief." *United States v. Goodson*,

700 Fed. Appx. 417, 423 n.6 (6th Cir. 2017) (citing *Hutton v.Mitchell*, 839 F.3d

486, 498 (6th Cir. 2016)).

> However, because this rule is procedural and not jurisdictional, this
> Court may excuse a default. *Hutton*, 839 F.3d at 498. On occasion,
> this Court departs from this rule in "exceptional circumstances or
> particular circumstances or when the rule would produce a plain
> miscarriage of justice." *Reed v. PST Vans, Inc.*, 156 F.3d 1231 (6th
> Cir. 1998). "[W]hether or not the circumstances of a particular case
> justify deviation from the normal rule of waiver is left largely to the
> discretion of the appellate court." *Fryman v. Federal Crop Ins. Corp.*,
> 936 F.2d 244, 251 (6th Cir. 1991).

*Id*. In the circumstances here, permitting Mr. Bartoli to continue serving an illegal

sentence would be unjust. Moreover, it would be in the interest of judicial

economy to resolve the issue promptly in this Court as part of the direct appeal,

rather than requiring Mr. Bartoli to raise the issue in a collateral civil action

pursuant to 28 U.S.C. § 2255, either directly or as a particular instance of

ineffective assistance of counsel.

In further support of this motion, Mr. Bartoli states as follows:

1.    Mr. Bartoli was sentenced to the following concurrent terms of imprisonment on the following counts of conviction:

| Count | Charge | Sentence |
|-------|--------|----------|
| 1 | Conspiracy, 18 U.S.C. § 371 | 60 months |
| 2 | Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff(a) | 240 months |
| 3 | Sale of Unregistered Securities, 15 U.S.C. §§ 77e(a) and 77x | 60 months |
| 4 | Wire Fraud, 18 U.S.C. § 1343 | 240 months |
| 5 | Mail Fraud, 18 U.S.C. § 1341 | 240 months |
| 8-10 | Attempted Tax Evasion, 26 U.S.C. § 7201 | 60 months |

Judgment, R.44, PageID## 270-72.

2.    All of the alleged offense conduct as to every count charged in the indictment had concluded by August 27, 1999. *See* Indictment, R.2, PageID## 5, 16, 22, 23, 30, 50, 53, 55, 56, 57 (alleging that criminal conduct occurred from "in or about 1995" through "on or about August 27, 1999" or on particular, earlier dates); *see also* Judgment, R.44, PageID# 270 (stating, as to each count of conviction, that "offense ended" as of 08/27/1999).

3.    The Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, increased the statutory maximum sentences for mail fraud, wire fraud, and

securities fraud to 20 years.  Prior to 2002, the statutory maximum sentence for mail fraud and wire fraud was 5 years, *see id.* Sec. 903 (amending mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, by "striking 'five' and inserting '20'"), and the statutory maximum sentence for securities fraud was 10 years, *see id.* Sec. 1106 (amending securities fraud penalties, 15 U.S.C. §78 ff(a), by "striking ' . . . imprisoned for not more than 10 years' and inserting ' . . . imprisoned for not more than 20 years.'").

4.     Imposing a sentence on Mr. Bartoli in excess of the statutory maximums in effect at the time of his offense conduct violates the *Ex Post Facto Clause* of the United States Constitution.  *See United States v. Lanham*, 617 F.3d 873 (6th Cir. 2010) ("The *Ex Post Facto* Clause 'bars application of a law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'") (quoting *Johnson v. United States*, 529 U.S. 694, 699 (2000) (internal citations and quotations omitted)).

5.     Throughout proceedings below, *all parties*, including the District Court, acted on the erroneous assumption that the applicable statutory maximum sentence for mail fraud, wire fraud, and securities fraud was 20 years.  *See* Plea Agreement, R.34, PageID## 2-3 (erroneously setting forth purported maximum sentence of 20 years for mail, wire, and securities fraud); Plea Transcript, R. 53, PageID## 330-32 (court erroneously advised Mr. Bartoli that maximum sentence

for mail, wire, and securities fraud was 20 years); PSR, R.38, PageID# 210

(erroneously setting forth purported statutory maximum sentence of 20 years for

mail, wire, and securities fraud); Judgment, R.44, PageID## 270-72 (imposing

concurrent 20-year sentences for mail, wire, and securities fraud).

6. "An illegal sentence — one 'where the term of incarceration exceeds

the statutory maximum' — 'trigger[s] per se, reversible, plain error.'" *United

States v. Titties*, 852 F.3d 1257, 1264 (10th Cir. 2017); *see also United States v.

Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996) (acknowledging that illegal

sentence is plain error); *United States v. Jackson*, 2000 U.S. App. LEXIS 22981,

N0. 99-5889, *4 (6th Cir. Sept. 7, 2000) (noting that when defendant received

sentence in excess of statutory maximum, his "rights have clearly been

substantially affected; moreover, such an illegal sentence would clearly tend to call

into question the fairness, integrity, or public reputation of the judicial

proceedings").

## CONCLUSION

For the foregoing reasons, resolution of the Petition for Rehearing should be

stayed, the case should be re-opened before the panel, Mr. Bartoli's judgment and

sentence should be vacated, and the case should be remanded. The remand should

be to a different District Judge, in light of other issues raised in Mr. Bartoli's

briefs. Specifically, even though the panel found that Mr. Bartoli did not establish

plain error prejudice from the government's violation of the plea agreement (a

conclusion that Mr. Bartoli, respectfully, has challenged in his Petition for

Rehearing), any proceedings on remand after such a breach should nevertheless be

conducted before a different judge. *See United States v. Barnes*, 278 F.3d 644, 649

(citing *Santobello v. New York*, 404 U.S. 257, 263 (1971)).

> Respectfully submitted,
>
> ERIC BARTOLI
> by his attorneys,
>
> /s/ William W. Fick
> William W. Fick
> Daniel N. Marx
> Hon. Nancy Gertner (ret.)
> FICK & MARX LLP
> 3 Post Office Square, 7th Floor
> Boston, MA 02109
> (857) 321-8360
> WFICK@FICKMARX.COM

RECIBIDO

No. 180

The Embassy of the United States of America presents it compliments to the Ministry of Foreign Relations of the Republic of Peru, Legal Affairs, and formally requests the extradition of Eric V. Bartoli, alias Enrico Orlandini, pursuant to the Treaty of Extradition between the United States of America and the Republic of Peru, signed on July 26, 2001, which entered into force on August 25, 2003 (the "Extradition Treaty").

The Embassy also refers to Diplomatic Note No. 303, dated March 29, 2010, which requested Bartoli's provisional arrest. He was provisionally arrested on or about December 11, 2013, and is currently detained in Peru pending extradition proceedings.

Please find enclosed the translated, certified, and authenticated documents formalizing the extradition. The offenses with which Bartoli is charged are covered by Article II of the Extradition Treaty. Pursuant to Article XII of the Extradition Treaty, the United States requests the seizure of all articles, instruments, objects of value, or documents in the possession of Bartoli at the time of his arrest that may be used as evidence for the crimes for which extradition is sought, for later delivery to the United States authorities should extradition be granted.

The Embassy respectfully notes that Diplomatic Note No. 303 inadvertently omitted Title 18, United State Code, and Section 2 from the statutory citations in the charges. As identified in the supporting extradition

Appendix E-1

11
26

-2-

documents, it is part of the charges for Counts Two, Three, Four, and Five. Further, please note that the United States is not seeking Bartoli's extradition for Counts Six and Seven of the Indictment.

In addition, please note that Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 1341 were amended in 2002. The text of the statutes included in Exhibit A of the extradition documents is the current, amended version of these statutes. Below, please find the text of these statutes as they were at the time Bartoli's alleged criminal conduct and as will be applicable in his prosecution.

Title 18 U.S.C. ' 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any

-3-

such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 5 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Title 18 U.S.C. ' 1343. Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 5 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

-4-

The Embassy of the United States of America avails itself of this opportunity to renew to the Ministry of Foreign Relations of the Republic of Peru the assurance of its highest consideration.

Embassy of the United States of America

Lima, February 6, 2014



Appendix E-4

(Document # 7) #9

### Artículo 243-B.-

El que por cuenta propia o ajena realiza o desempeña actividades propias de los agentes de intermediación, sin contar con la autorización para ello, efectuando transacciones o induciendo a la compra o venta de valores, por medio de cualquier acto, práctica o mecanismo engañoso o fraudulento y siempre que los valores involucrados en tales actuaciones tengan en conjunto un valor de mercado superior a cuatro (4) UIT, será reprimido con pena privativa de libertad no menor de uno (1) ni mayor de cinco (5) años." **(\*)**

**(\*) Capítulo V incorporado por la Décimo Primera Disposición Transitoria y Final de la Ley Nº 27649, publicada el 23-01-2002.** ✳

(Document # 6)

## ARTÍCULO 517: Rechazo de la extradición

1. No procede la extradición si el hecho materia del proceso no constituye delito tanto en el Estado requirente como en el Perú, y si en ambas legislaciones no tenga prevista una conminación penal, en cualquiera de sus extremos, igual o superior a una pena privativa de un año. Si se requiere una extradición por varios delitos, bastará que uno de ellos cumpla con esa condición para que proceda respecto de los restantes delitos.

2. La extradición no tendrá lugar, igualmente:

a) Si el Estado solicitante no tuviera jurisdicción o competencia para juzgar el delito;
b) Si el extraditado ya hubiera sido absuelto, condenado, indultado, amnistiado o sujeto a otro derecho de gracia equivalente;

c) Si hubiera transcurrido el término de la prescripción del delito o de la pena,

conforme a la Ley nacional o del Estado requirente, siempre que no sobrepase el término de la legislación peruana;
d) Si el extraditado hubiere de responder en el Estado requirente ante tribunal de excepción o el proceso al que se le va a someter no cumple las exigencias internacionales del debido proceso;

e) Si el delito fuere exclusivamente militar, contra la religión, político o conexo con él, de prensa, o de opinión. La circunstancia de que la víctima del hecho punible de que se trata ejerciera funciones públicas, no justifica por sí sola que dicho delito sea calificado como político. Tampoco politiza el hecho de que el extraditado ejerciere funciones políticas. De igual manera están fuera de la consideración de delitos políticos, los actos de terrorismo, los delitos contra la humanidad y los delitos respecto de los cuales el Perú hubiera asumido una obligación convencional internacional de extraditar o enjuiciar;

f) Si el delito es perseguible a instancia de parte y si se trata de una falta; y,
g) Si el delito fuere tributario, salvo que se cometa por una declaración intencionalmente falsa, o por una omisión intencional, con el objeto de ocultar ingresos provenientes de cualquier otro delito.

3. Tampoco se dispondrá la extradición, cuando:

a) La demanda de extradición motivada por una infracción de derecho común ha sido presentada con el fin de perseguir o de castigar a un individuo por consideraciones de raza, religión, nacionalidad o de opiniones políticas o que la situación del extraditado se exponga a agravarse por una u otra de estas razones; b) Existan especiales razones de soberanía nacional, seguridad u orden público u otros

intereses esenciales del Perú, que tornen inconveniente el acogimiento del pedido;

c) El Estado requirente no diere seguridades de que se computará el tiempo de privación de libertad que demande el trámite de extradición, así como el tiempo que el extraditado hubiese sufrido en el curso del proceso que motivó el requerimiento.
d) El delito por el que se solicita la extradición tuviere pena de muerte en el Estado requirente y éste no diere seguridades de que no será aplicable.

**Concordancia:**

NCPP : 537.3

(Document #8) #8

**ARTÍCULO 518: Requisitos de la demanda de extradición**

1. La demanda de extradición debe contener:

a) Una descripción del hecho punible, con mención expresa de la fecha, lugar y circunstancias de su comisión y sobre la identificación de la víctima, así como la tipificación legal que corresponda al hecho punible;

b) Una explicación tanto del fundamento de la competencia del Estado requirente, cuanto de los motivos por los cuales no se ha extinguido la acción penal o la pena;

c) Copias autenticadas de las resoluciones judiciales que dispusieron el procesamiento y, en su caso, el enjuiciamiento del extraditado o la sentencia condenatoria firme dictada cuando el extraditado se encontraba presente, así como la que ordenó su detención y/o lo declaró reo ausente o contumaz. Asimismo, copias autenticadas de la resolución que ordenó el libramiento de la extradición;

d) Texto de las normas penales y procesales aplicables al caso, según lo dispuesto en el literal anterior;

e) Todos los datos conocidos que identifiquen al reclamado, tales como

nombre y apellido, sobrenombres, nacionalidad, fecha de nacimiento, estado civil, profesión u ocupación, señas particulares, fotografías e impresiones digitales, y la información que se tenga acerca de su domicilio o paradero en territorio nacional.

2. Cuando lo disponga el Tratado suscrito por el Perú con el Estado requirente o, en aplicación del principio de reciprocidad, la Ley interna de dicho Estado lo exija en su trámite de extradición pasiva, lo que expresamente debe consignar en la demanda de extradición, ésta debe contener la prueba necesaria que establezca indicios suficientes de la comisión del hecho delictuoso y de la participación del extraditado.

3. Si la demanda de extradición no estuviera debidamente instruida o completa, la autoridad central a instancia del órgano jurisdiccional y en coordinación con el Ministerio de Relaciones Exteriores pedirá al Estado requirente corrija o complete la solicitud y la documentación.

**Concordancia:**

NCPP : 79, 526.2 D.S. 019-2006-JUS:11

Appendix  H